310-0584 Richard W. McCarthy Trust, et al. Appellees by Daniel Churchill v. Illinois Casualty Company, et al. Appellants by Thomas Colley The paragraph 14 of each of the four surplus notes at issue provides for accelerated payment on two conditions. One, that the owner of the notes is the original holder of the notes at the time of his death, and that the original holder's estate requests accelerated payments on the notes. Upon request by the estate of the original holder for accelerated payment, Illinois Casualty is then required to apply to the Department of Insurance for accelerated payment, quote, subject to the other conditions and terms of the note. Richard McCarthy was the original holder of the four surplus notes at issue. Three of the notes were issued to Mr. McCarthy on February 1, 2004, and the fourth was issued on July 15, 2004. McCarthy established a plaintiff trust in this case several months after Illinois Casualty issued the last note to McCarthy. He established that trust in September of 2004. Over a year later, in November 2005, McCarthy requested that the ownership of the four notes be transferred to the trust. Illinois Casualty approved that transfer of ownership of the notes from Mr. McCarthy to the trust, and after that approval was transferred, all payments of interest and principal, which are made periodically over the term of the notes, are made to the trust. In 2008, Mr. McCarthy died, and after Mr. McCarthy's death, the trustee requested accelerated payments of the notes pursuant to paragraph 14 of the notes. Illinois Casualty's board of directors rejected that request for two reasons. First, the trust was not the original holder of the notes under paragraph 14, and therefore was not entitled to accelerated payment. Second, and in any event, at the time the request for accelerated payment was made, which was in the middle of the financial crisis of 2008, the unanimous board made the determination that Illinois Casualty was not in a financial condition to permit accelerated payment of $1.6 million in notes, and it believed that to make such a payment would endanger the well-being of the public. The trial court granted the trust's claim for specific performance and required Illinois Casualty to send a letter to the Department of Insurance requesting accelerated payment on behalf of the trust. The trial court held that a letter that Illinois Casualty's president, Mr. Klackauer, sent to McCarthy on January 29, 2004, before any of the surplus notes was issued, quote-unquote, clarified and amended paragraph 14 of the notes to entitle the trust to pay $1.6 million. The trial court also ruled that Illinois Casualty's board could not take into consideration its financial condition in deciding whether or not to apply to the Department of Insurance for accelerated payment. Your Honors, as a matter of law, the January 26, 2004 letter to which the trial court referred does not clarify or amend the notes. That letter was sent before any of the notes was issued and before the trust was established. The notes are unambiguous, and they provide in paragraph 14 that only the estate of the original holder can request accelerated payment. None of the notes refers to the January 29, 2004 letter or to the right of the trust to require accelerated payments. The January 29, 2004 letter represents inadmissible hearsay evidence. Under the parole evidence rule, extrinsic evidence is inadmissible to modify the unambiguous provisions of a written contract. The trust has acknowledged to the trial court that the January 29 letter is inadmissible parole evidence. Indeed, the trust repeatedly stated to the trial court that the January 29 letter was irrelevant for a summary judgment motion. The trustee's argument was that the trust itself, like Mr. McCarthy, was an original holder. That was their argument, not in anything to do with the January 29, 2004 letter. And moreover, the January 29, 2004 letter is not a contract. It was not signed by Mr. McCarthy, and it was not supported by consideration. What was the November response to that? I'm sorry? The November letter. The November, okay, if we can talk about that. The November 2005 letter. Right. The November 2005, it was a letter from Mr. McCarthy. He sent it to the, and that's where he requested change of ownership. That, too, Your Honor, is unambiguous. All that refers to is to the request for change of ownership. The trial court held that the November 2005 request for change of ownership somehow incorporated or must be read in conjunction with the January 29 letter. The January 29 letter was written 22 months before. There was no reference anywhere in the November 2005 letter to the January 29, 2004 letter. There's no reference in that letter to accelerated payments. And so it's unambiguous. All it requested was simply a change in ownership from McCarthy to the trust. And going back to the January 29 letter, in itself, or whether the argument is made that it's incorporated in the later letter, in addition to being inadmissible parole evidence and not being a contract, it wasn't approved by Illinois Casualties Board of Directors. The President of the company signed the November. He signed both letters. Correct. Yes. And the law in Illinois is, under the insurance code, that the Board of Directors makes decisions for the company. They're the decision makers of the company. Indeed, in the common law, a president of a company can conduct ordinary transactions for a company, but the extent that something is extraordinary or unusual, the board must approve that. And the board never approved any accelerated payments here, and they never approved or ratified the January 29, 2004 letter. But they did approve and ratify the November letter. Right. That's correct. And as I said, the November letter doesn't refer to accelerated payments for the trust, and it doesn't refer to the January 24, 2004 letter. All that is requested in there is a transfer of ownership of the notes from McCarthy to the trust, and that was approved. Correct. And moreover, the notes themselves and the Illinois insurance code require that any modification to the notes must be approved by the Department of Insurance. And there was never a request to the Department of Insurance ever that the notes be modified to allow accelerated payments to the trust. So those are the four reasons that the November 29, 2004 letter simply is inadmissible parole evidence, and indeed, the trust didn't make a different argument in the trial court level. The trust was an irrevocable living trust? It was a living trust. Mr. McCarthy was the trustee? He was the original trustee, correct. And the transfer was from him as an individual to him as the trustee? Correct. That's right. That's right. And our argument, Your Honor, is that the argument that the trustee has made in the trial court was that Mr. McCarthy is an individual, and the trust set up by Mr. McCarthy are the same legal entities. And we submitted the trial court, and the trial court did not disagree that they are really distinct legal entities. And Illinois has recognized for years and years that an individual and a trust are two distinct legal entities, and that Mr. McCarthy understood that they were two distinct legal entities. Because back in January 29, 2004, when this letter was being discussed, the possibility was discussed whether or not the notes would be amended to allow accelerated payments by the trust. For whatever reason, between the time of that letter and the time that the trust was actually set up, the notes were never amended to provide for that. So everybody understood that it would require an amendment to the notes to allow accelerated payment, but that was never done. But changing the names of the notes from McCarthy individually to McCarthy as a trustee is a change of ownership, isn't it? Well, that's the point. I mean, if there's a change of ownership, he's no longer the original holder. The trust now is a new owner. They're not the original holder. And that's what the Illinois Casualties Board decided. The trust, the trustee, you are not the original holder of these notes. The original holder is Mr. McCarthy. We agreed with you. You asked us to change the ownership of these notes from the individual to the trust. We did that. And under provisions of paragraph 14, the trust is no longer the original holder. So you don't think you can read the January 04 letter at all with the November 05 letter? No, I do not. I mean, first of all, one doesn't refer to the other. The trust has made the point that one does not refer to the other. They've argued that the November 1, 2005 letter does not incorporate the January 22, 2004 letter. There's no reference to accelerated payments. There's no reference to that letter. It simply asks nothing more than a change of ownership. And, indeed, it says the payment terms under the trust will be the same. It's very clear that what they're requesting is simply a change in the name of the owner of the notes. And none of the content of the note would be changed. And if you look at the letter that was then or the board approval of the November 1, 2005 letter, that, too, requests simply a change in ownership, not change in the contents of the notes. There was never any change about who could require accelerated payments. But all that was done in the face of the January 04 letter where there was an intent expressed in that letter. Well, Your Honor, I submit that the letter says what it says, obviously. But it's inadmissible hearsay. We don't know why after the January 24, 2004 letter was sent to the time the notes were signed to the time the trust was created, what happened, what exchanges the people had, how the negotiations changed, what consideration was given for other things. Things do change. There is a letter out there, and my understanding is the reason why Illinois law concludes you can't look at parole evidence is because at the end of the day, the people sat down and they agreed on a contract. And that contract is embodied in the notes. And those notes, the only change that was ever made to those notes was change the name on the notes from Mr. McCarthy to the trust. The January letter says what it says, but the argument was made by both sides to the trial court that that's not here for purpose of summary judgment. The trust argument always was that the original holder language stands. It's just the trust is the original holder. We argue it's not. The trial court looked at the January 22, 2004 letter. Both sides were before the court, so that's not what was included in the notes. It wasn't to be read into the notes. It wasn't to be read into the later November 2005 letter. Mr. Colley, I'm looking at the language in the November letter. Right. And it says I'm requesting transfer and do hereby assign all of my rights, title, and interest in the notes to my living trust as specified below. Correct. And then he says please change the ownership designation. It doesn't read to me like necessarily he's asking to actually have the ownership changed, that he's transferring his interests from himself as an individual to himself as the trustee of a revocable trust where he is the trustee. The transfer was made to he was a trustee, but the transfer was made to the trust. The request was made and the transfer was affected to the trust because payments were made in intervening years from the time the ownership was changed from Mr. McCarthy to the trust. The principal and interest payments were made to the trust, not to Mr. McCarthy, but to the trust. Okay. All right. So there's never been any issue about once the change in ownership was made, who the owner was. The Illinois casualty has always been in a good position. After the letter was written in November 2005 that was accepted, the board agreed that the ownership should change, just the ownership. There was never any argument about the content of the note changing. A request was sent to the Department of Insurance and the Department of Insurance okayed it. From that point forward, all the payments of interest to the principal, which under the notes, unless they're accelerated, extend out to 2034 or so, all those payments were made to the trust as the owner. And we've cited a number of cases in our brief that say that a trust is a distinct legal entity from an individual. Counselor, you have two minutes. Let me go to the last point, which is the financial condition. The board determined unanimously that, irrespective of paragraph 14, that Illinois casualty was not in a financial position to request of the Department of Insurance accelerated payments. And the reason for that was, as they said, that they were concerned about the payments to the policyholders. As I indicated, this was in the middle of 2008 at the height of the financial crisis, height of the decline in the equity markets. And our argument to the trial court is that the business judgment rule protects the decision of boards of directors. And it's assumed under the business judgment rule that when a board of directors of a company make a decision, they've acted honestly in the best interest of the company. And the only way that presumption can be overcome is if there's evidence presented that the board acted fraudulently or without sufficient information and no such evidence was presented to the trial court. Well, this isn't a case about mismanagement, though, is it? No, but it's a case about exercising business judgment. Paragraph 6 of the trust, which paragraph 14 says that you accelerate the notes except under other provisions provided in this note. Paragraph 6 says that payment on the notes should always be – the notes are the last thing paid. They're like equity holders. The creditors and the policyholders had to be paid first. What language in 14 gives discretion to the – the very last thing where it says subject to the other provisions of this note. And if you look at paragraph 6, that talks about what the board should look to. And protection of the policyholders is always the primary focus of the board. And we submit to the court that the business judgment rule protects that judgment of the board of directors, that they made their business decision. We cannot at this time request accelerated payment. And unless there is evidence that there has been a fraud or mismanagement of something that would take away that presumption, the presumption stands. Thank you. Counsel. Good afternoon. May it please the court. Counsel, my name is Daniel Churchill. Mark Churchill and I represent the plaintiffs in this action, the Richard McCarthy Trust, and also the estate of Richard McCarthy. The successor trustee, John Callis, started right after the death of Dick McCarthy in 2008 to request payment and redemption of the $1.6 million of notes. Mr. McCarthy was the founder of ICC and the predecessor of Blackhawk Incorporated. The history of proceeding is reflected clearly in the briefs, et cetera. In light of the questions of the court, however, previously in my opposing counsel, I'd like to just call the court's attention to one fact that's set forth in their reply brief, which it's not disputed that all payments made since the transfer of the notes to the trust have been made to the trust, principal and interest. We've rejected the attempts to pay principal, but nevertheless, the payments have been going to the trust. In addition, to address the court's previous questions, is the Internal Revenue Service requirement that you do not require a grantor in a revocable trust. Counsel, Judge, your question was that irrevocable trust became irrevocable on the death of Mr. McCarthy. Up until that time, it was a standard grantor estate planning vehicle that he could change up until the time of his death. All right, the Internal Revenue Service, and we've pledged this and it's in the record, does not require a separate taxpayer identification number as long as the trustee is the grantor of that trust. So it's one and the same person from the standpoint of tax reporting purposes. And also, the Internal Revenue Service does not require a separate return to be filed by the taxpayer who is the grantor of a trust of that type. Going through a little housekeeping, too, we have a couple of cosmetic errors in our briefing. We apologize for that. Page number 17, I incorrectly referred to plaintiff's assertions, and it should have read defendant's assertions. It's at line 7, and I apologize for that. Page 23 in the narrative, there's a citation of the court's order of July 29th of 10. It should have been to the paragraph 115. We got type 155. I apologize. Trial court's order is made up of 41 uncontested facts. I have the order here in front of me. I'd like to highlight just a couple of issues pertaining to it. Court found and the parties agreed that basically there were three issues always before a court for summary judgment. First is, of course, the absence of material facts. Second, Judge Vandewiede held was the trust entitled to acceleration of the notes by reason of the death of McCarthy on April 26th of 2008 and thus entitled to a specific performance to compel IC to submit the reference letter to the Department of Insurance. Third is whether the ICC had discretion to stonewall or to stop that approval process from going forward for the reasons that counsel has just indicated to the court, including the business judgment rule. I'll address all of them briefly. The court took 71 paragraphs then to make its legal analysis of the various topics before it for consideration, ruling that there were basically, in addition to the promissory notes, which are contracts between the parties, 43 key documents. First is exhibit number eight. That is the November 1st of 2005 request for change of form of ownership. Second is the court relied upon the January 29th, 2004 letter, exhibit two, to clarify an ambiguity in the November 1st, 2005 letter. Third is the resolution of the Board of Directors of the Illinois Casualty Company adopted November 1st, 2005, which was also sent to the Department of Insurance as we established the Freedom of Information Act. That's exhibit number three. Now, counsel is correct in saying that we both were wrong. We both missed it with the trial court. We both urged different interpretations of the document of January 29th, 2004 as opposed to what the trial judge did. Obviously, the court was smarter than we both were because the court ruled then that the clocked-out affidavit, which was filed in an attempt to amend the meaning of the January 29th, 2004 letter, was inadmissible from the standpoint that, number one, it was self-serving. It was an attempt after the death of Richard McCarthy to change what was the party's agreement in the inducement made January 29th of 2004 so that Dick McCarthy would proceed with the deal. If you can remember from the record, the matter was actually set for closing on December 31st of 2003. Mr. McCarthy held off and didn't accept until February 1st of 2004. That letter had to do with that because he was concerned about what would happen in the event that he followed normal estate planning provisions after the fact that the closing was held. Third, the court ruled that the exhibit thus of January 29th, 2004, the exhibit itself, could clarify an ambiguity, a difference of opinion with respect to how to interpret the 2005 letter, the letter actually asking for the change. And he said different minds can look at that letter and read it differently. He ruled it was ambiguous in several paragraphs of his decision. And he certainly followed what I was taught in law school, and that's a long time ago, to certainly in a summary judgment in any order the court lay out adequate findings so that this tribunal can know exactly where he was looking and what he was looking at in reaching his decision. Paragraph 107 then states, when you read McCarthy's letter of November 1st, 2005, in conjunction with Klockau's letter of January 29th, 2004, the only interpretation is that the trust would have the same rights as the original holder. Paragraph 91 of his order extracts the key wording of the actual document itself. Paragraph 92 shows it's an attempt, November 1st, 2005, to modify the terms of the promissory notes, the four notes themselves. You go on then from that point forward, and paragraphs, and now I'm going to go specifically to the court's order, paragraphs 108 and 109. 108 says, ICC is a stop from asserting any meaning other than that set forth in the January 29th, 2004 letter. Paragraph 109, as a matter of law, ICC is a stop from denying the trust the same rights as the original holder of the note. And then finally in 110, therefore the trust has the same rights as McCarthy's estate would have had under paragraph 14 of the notes. In other words, the trust has right to seek early redemption upon McCarthy's death. Business judgment rule. Counsel wants us to believe that under the business judgment rule, parties or corporations can change their contract obligations. Wrong. That's not what the law is. That's not at all what the law is. It's never a defense to a breach of contract claim, and we set that forth in our brief. We set it forth also in our argument with Judge Vandewiele. A similar situation would be that the mortgage that they have on their new building in Rock Island, when times turned tough in 2008, that they go to the bank and say, we just don't want to make our payments right now. That would be the same thing that they're doing here because the McCarthy Trust is a creditor of ICC. You can't just say that things have gone bad, otherwise we wouldn't have the mess we have in the country now with all the mortgage foreclosures if that was an option. So that just isn't an option. In addition, the evidence that was included in their brief about the AM Best rating was never produced as far as evidence to the trial court, or was it included on July 12th of this last year when the arguments were made to Judge Vandewiele. It appeared for the first time in the brief filed before this court. Finally, the ICC's Board of Approval was granted on November 1st of 2005. That was one of the documents that was signed by Mr. McClockout and attested by Mr. McCarthy as Corporate Secretary of ICC, and was sent to the Springfield Office of the Department of Insurance to approve the fact that the November 1st request for change of ownership had been approved by the ratification of the Board of Directors. I am at a loss to understand where they say that the company has never approved that transaction. Last but not least was the Illinois Department of Insurance. We sent a Freedom of Information Act off so that we could get the documents actually that were presented to the Department of Insurance to authorize the approval of the change of ownership from McCarthy to McCarthy's Trust. That came back to us, and I think it's referenced in paragraph number 120 of the court's decision also, but it came back to us clearly, along with some supplemental information, that no regulatory approval was required. It's what was handwritten at the top of the page. It appears as an attachment to the second supplemental affidavit of John Callas that we filed just in advance of the motion for summary judgment arguments. So, in conclusion, plaintiff's counsel, I think, stated in... I'm sorry, defendant's counsel stated once you change ownership, you can't avail yourself of paragraph 14. That ignores the totality I urge the court to consider. When you look at number one, exhibit number eight, the November 1st, 05 document, as clarified by exhibit number two, which was the January 29th, 04 letter, as approved by the Board of Directors on November 1st of 05, exhibit number three, as approved by the Department of Insurance on January 4th and January 5th of 06, which was documented at the top of that letter. And last but not least, the promissory notes each carry with them a requirement for a minimum surplus capitalization. We need to remember this is a mutual insurance company. They have to be capitalized in such a fashion in order for capital notes or surplus notes to be redeemed. As of March 31st, 2010, that was $23 million. The notes call for $18.5 million as a threshold, a minimum threshold after the $1.6 million is paid. On March 31st of 2010, it was $24,066,777. So as such, based upon what we contend to the court, the trial court was correct in granting summary judgment for us in looking at all of these factors, saying there's no question of fact and this is how we rule with respect to the request that they be required under one aspect to submit the letter. They then submitted the letter and there are some other extraneous matters, but that's not before the court in my opinion at this time. That's still back in the trial court. I thank you for your patience and your courtesies. And listen to me, are there any questions you have for me? No, thank you, Judge. Thank you very much. The fact is that the trust is a separate legal entity from Mr. McCarthy, irrespective of the ID numbers used in connection with the Internal Revenue Code. We've cited cases where the Illinois courts have said that a trust is distinct from the set law of the trust on page 23 of our initial brief. In fact, the issue that the trust was distinct from the set law of the trust was highlighted in a discussion reflected in that January 29, 2004 letter. But the fact is that January 2004 letter, which discussed permitting the trust to accelerate payment, the discussion ended there. The notes were signed later. They only provide for accelerated payments by the owner, Mr. McCarthy, not by the trust. There was never any discussion anywhere about accelerated payments aside from that letter. And we submit that that letter is not a contract, that that letter was not approved by the board, that that letter was not approved by the Department of Insurance, which under both the Illinois Insurance Code and the note provides that the department has to approve any change to the terms of the note. And that would have been a change to the terms of the note. It was never approved. And if you read the November 1, 2005 letter, that is a request solely for change of ownership. It nowhere refers to the November 29, 2004 letter. It nowhere refers to accelerated payments. Once that letter was received, the board approved it. Again, never referred to accelerated payments,  It was sent off to the Department of Insurance, and all that was requested was a change in the name of the note from Mr. McCarthy to the trust. So I submit that the only evidence that is here is really inadmissible parole evidence that predates the note that was not embodied in the note. And as to the reference to the threshold amount of $18.4 million, the notes do say that there is a floor that has to be exceeded before the board is authorized to make a request. But the notes also provide, in paragraph 6, that if the threshold surplus of the company is higher than that, that the company has the ability to make the decision whether or not to request accelerated payments of the notes. And they are looking out for the best interest of the policyholders. And if the Anandis Board makes the determination that it's in the best interest of the policyholders not to accelerate payments of the notes at this time, that is subject to the business judgment, or I submit. Thank you. Thank you, counsel. The court will take this case under advisement and rule with dispatch of the first case.